**HAGENS BERMAN SOBOL SHAPIRO LLP**
Shana E. Scarlett (217895)
715 Hearst Avenue, Suite 202
Berkeley, CA 94710
Telephone: (510) 725-3000
Facsimile: (510) 725-3001
shanas@hbsslaw.com

**HAGENS BERMAN SOBOL SHAPIRO LLP**
Robert B. Carey *(pro hac vice)*
John M. DeStefano *(pro hac vice)*
11 West Jefferson Street, Suite 1000
Phoenix, Arizona 85003
Telephone: (602) 840-5900
Facsimile: (602) 840-3012
rob@hbsslaw.com
johnd@hbsslaw.com

**NEGRETTI & ASSOCIATES PLC**
Jonathan Negretti (294872)
2415 E Camelback Rd, Suite 700
Phoenix, AZ  85016
Telephone: (602) 531-3911
jonathan@negrettilaw.com

*Attorneys for Plaintiff and the Proposed Class*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| GORDON BEECHER, an individual, individually and on behalf of all others similarly situated,<br><br>                                Plaintiff,<br><br>    v.<br><br>GOOGLE NORTH AMERICA INC., a Delaware corporation.<br><br>                               Defendant. | No. 5:18-cv-00753-BFL<br><br>**FIRST AMENDED CLASS ACTION COMPLAINT**<br><br>**DEMAND FOR JURY TRIAL** |

# TABLE OF CONTENTS

**Page**

I.      INTRODUCTION ..................................................................................................1

II.     JURISDICTION AND VENUE ............................................................................2

III.    PARTIES ...............................................................................................................2

IV.     FACTUAL BACKGROUND ................................................................................3

      A.      The Project Fi Mobile Data Plan ............................................................3

      B.      Google Bills Its Customers for Data Service While Connected to WiFi ...................7

V.      CLASS ACTION ALLEGATIONS .....................................................................14

VI.     CLAIMS FOR RELIEF .......................................................................................16

COUNT I  VIOLATIONS OF THE CONSUMER LEGAL REMEDIES ACT
      (CAL. CIV. CODE § 1750, ET SEQ.) ...............................................................16

COUNT II  VIOLATION OF THE CALIFORNIA UNFAIR COMPETITION LAW
      (CAL. BUS. & PROF. CODE § 17200, ET SEQ.) .............................................18

COUNT III  VIOLATION OF THE CALIFORNIA FALSE ADVERTISING LAW
      (CAL. BUS. & PROF. CODE § 17500, ET SEQ.) .............................................20

COUNT IV  BREACH OF CONTRACT ...................................................................21

PRAYER FOR RELIEF .................................................................................................23

DEMAND FOR JURY TRIAL ......................................................................................23

# I.    INTRODUCTION[1]

1.    When a mobile data service agrees to bill on a per-gigabyte basis, the mobile data service must provide data only as promised and bill for it accurately. When a mobile data service promises its customers not to charge "for the data you use when connected to open or home Wi-Fi," it cannot charge for data usage when a mobile device is connected to WiFi networks. When a mobile data service makes such a promise and then bills its customers for data that customers obtain independently or data provided despite the customer's connection to a WiFi network, it violates the contractual rights of its customers as well as California law prohibiting fraud, unjust enrichment, and unlawful, unfair, and deceptive practices.

2.    Gordon Beecher ("Plaintiff") is suing Google North America Inc. ("Google" or "Defendant") over Google's practice of billing its mobile data customers for data usage even though their mobile devices are connected to WiFi networks. Google provides mobile phone and data services under a program entitled "Project Fi," which provides customers with access to mobile data services in partnership with various mobile data carriers. Throughout its marketing materials, Google emphasizes to customers that they will not be billed for cellular data that they do not use or need. And specifically, Google promises its customers that they will not be billed for data used "when connected to open or home Wi-Fi."

3.    Customers reasonably expect that they will not be billed for data while connected to a WiFi network that they paid for independently or obtained for free from an open connection. Indeed, a primary reason mobile device users connect to WiFi networks is to avoid consuming cellular data that is limited in amount or leads to additional cellular charges. Google assures its Project Fi customers that they retain the freedom to avoid cellular charges this way. But instead of tracking the data customers receive when not connected to WiFi, Google's software tracks the data service that customers receive at all times and bills them for it.

---

[1] Plaintiff, by and through his attorneys, based on his individual experiences, makes these allegations based on the investigation of counsel, and upon information and belief.

4.      Google has violated and continues to violate Plaintiff's rights under California law by marketing, selling, and providing a mobile data service that inaccurately and unlawfully bills its customers for data while they are connected to WiFi networks. This practice unjustly enriches Google at the expense of Plaintiff and class members. Google's conduct violates Plaintiff's rights under his written agreement with Google as well as California statutory and common law prohibitions of fraud, misrepresentation, unfair competition, and unjust enrichment. Plaintiff seeks, on behalf of himself and a class of similarly situated consumers, compensation from Google, as well as injunctive relief for violations of Plaintiff's rights flowing from Google's unlawful tracking of and billing for data while its customers are connected to WiFi networks.

## II.      JURISDICTION AND VENUE

5.      This Court has subject matter jurisdiction pursuant to the Class Action Fairness Act of 2005, 28 U.S.C. § 1332(d), because at least one class member is of diverse citizenship from Defendant, there are more than 100 class members, and the aggregate amount in controversy exceeds $5,000,000.

6.      The Court has personal jurisdiction over Plaintiff because Plaintiff submits to this Court's jurisdiction. This Court has personal jurisdiction over Defendant because Defendant has its principal place of business in this district, Defendant transacts business in this district, and Defendant consented to the jurisdiction of the federal or state courts of Santa Clara County, California, in written terms of service on Google's website.

7.      Venue is proper in this District under 28 U.S.C. § 1391(a) because a substantial part of the events or omissions giving rise to the claims occurred and/or emanated from this District and Defendant has caused harm to class members residing in this District. Further, venue is proper because Defendant has consented to the venue of the federal or state courts of Santa Clara County, California, in written terms of service on Google's website.

## III.      PARTIES

8.      Plaintiff Gordon Beecher is a Colorado citizen and a consumer who has purchased and continues to purchase Google's Project Fi services for his personal use.

9.      Defendant Google North America Inc. is a Delaware corporation with its principal place of business in Mountain View, California. Google North America Inc. owns and operates the Project Fi mobile phone and data service as alleged throughout this Amended Complaint.

10.      Plaintiff brings this action individually and on behalf of a class of Google consumers as defined below.

## IV.      FACTUAL BACKGROUND

### A.      The Project Fi Mobile Data Plan

11.      Among its broad assortment of internet-related services and products, Google offers a mobile phone and data service. Google calls the service "Project Fi." Google has partnered with several mobile data carriers to provide Project Fi users with access to mobile data on a pay-as-you-go basis. Until recently, the Project Fi service was available only to consumers using Google-manufactured devices such as the Pixel, Pixel 2, Nexus 5X, and related models.

12.      Users of the mobile data service choose a monthly data allocation as an estimate of their monthly charge, but Google bills per gigabyte of data used. That is, Google generally charges $10 per gigabyte of data actually used, whether as part of the pre-purchased data allocation or additional data used by the customer.

13.      Google's Terms of Service falsely assure customers that Google will bill them only for their use of Google's products and services ("Services").

14.      Under the Terms of Service, Google requires users only "to pay all applicable charges for the Services you use."

15.      The Terms of Service authorize Google only "to automatically collect payments of all charges associated with the use of the Services from your designated payment method."

16.      And through the Terms of Service, Google promises that it will use information collected from customers' devices to "[b]ill you and collect payment for the Services and devices that you [customers] purchased."

17.      Price and billing method are central and material considerations for consumers shopping for and purchasing a mobile data plan. Google advertises Project Fi primarily through its website, fi.google.com. Reasonable consumers considering whether to purchase Google's mobile

data plan would investigate Google's website to determine how the plan is priced and billed, and they regularly do consult and rely upon it. Whether data usage is billed at a flat monthly rate or on a pay-as-you-go basis is of paramount importance to the average consumer, as is the rate at which data usage is billed.

18.    Google further assures its customers that they can avoid using (and being charged for) cellular data by making use of a home or open WiFi connection. Mobile device users generally expect and assume they can avoid using cellular data and incurring associated charges this way. While cellular data often is limited in amount, delivered at a slower speed, and paid for on a per-gigabyte basis, WiFi connections are generally unlimited in amount, delivered at a higher speed, and either obtainable for free (in the case of open WiFi connections) or paid for at a flat monthly rate (in the case of home WiFi connections and some public hotspots).

19.    Google's website contains numerous prominent statements, including the Terms and Conditions above, which misrepresent that accuracy and affordability of the mobile data plan. Google falsely assures customers that they will not be billed for data that they do not receive or need from Google, and then bills customers for data usage while they are accessing a WiFi connection that is independent of Google and its affiliated networks.

20.    Through early 2018, Google's home page for the mobile data plan stated in large, bold type: "Never pay for unused data. Mmm…sweet. $10/GB for data you use and credit back for data you don't. No contracts and no sneaky fees."

21.    Immediately below that text, a link to "Plan Details" leads to a page that states "Never pay for unused data" and "Data $10/GB" in large print.

22.    Google's home page for the mobile data plan currently states that the plan "makes saving twice as sweet" and assures consumers that "Bill Protection makes sure you're never paying for data you don't need."

23.    Google's Frequently Asked Questions page for Project Fi specifically assures consumers that they will never be billed for data while connected to WiFi.

24.    The Frequently Asked Questions link is prominently displayed at the top of the service's home page alongside links regarding "Plan," "Phones," and "Coverage." Under the heading

"Plan and Pricing" in the Frequently Asked Questions, in response to the question "Am I charged for data usage when I'm connected to an open Wi-Fi hotspot or my home Wi-Fi?" Google states, "No, you are not charged for the data you use when connected to open or home Wi-Fi. We only charge $10 per GB for the cellular data you use."

25.    In 2015 and 2016, Google emphasized the accuracy of its billing plan and its promise not to bill customers for data they independently obtain, by stating on its website, "Never pay for unused data . . . you pay only for what you use." Google further promised "A bill that's easy to understand."

26.    In 2017, Google continued with the same marketing angle, stating on its website, "Get credited for the data you don't use" and "You should never pay for something you don't use."

27.    In 2015, Google published a promotional video stating that Project Fi offers "prices that make sense, and tech that just works."

28.    In 2017, Google published a promotional video with the caption, "A simple plan with no contracts and no hidden fees."

29.    In 2017, Google published a promotional video addressing the cost of its mobile data service. The 15-second spot states, "Save for the things you want" while a beaming woman adds a giant porcelain owl to her owl shrine. A second caption reads, "By never paying for data you don't use."

30.    In 2017, Google published a second promotional video addressing the cost of its mobile data service. The 15-second spot states, "Save for the things you want" while a man hefts a large bonsai tree into his bonsai salon. A second caption reads, "By never paying for data you don't use."

31.    As a further demonstration of Google's assurance that consumers will save money because the Project Fi service allows them to control when they are accessing mobile data, the Project Fi website contains a calculator allowing visitors to calculate the monthly expense of the service based on the number of lines, the amount of monthly data requested, and the amount of that data allocation that remains unused at the end of the month.

32.    The clear implication of the fee calculator is that users will only be charged for the data obtained by way of Google's mobile data service—the reason their data usage is measured against the monthly allocation—and that users can save money by avoiding cellular data usage.

33.    Google further touts the affordability of its mobile data service on its website with the catchphrase, "All the bells and whistles without the nickels and dimes."

34.    Google promises its customers that they can avoid data charges by limiting their usage of Google's data service because the service lets them "[r]ake in credits for [their] unused data with a contract-free plan."

35.    Google promises prospective customers that they will "never pay for unused data."

36.    Google advertises Project Fi as being "Fair and simple. Just the phone plan you've been craving."

37.    Google has also promoted the accuracy and ease of its billing system on Twitter. In early 2018, Google posted, "Get data by the slice, or the pie, and only pay for the gigs you use."

38.    On Halloween 2017, Google posted on Twitter, "When it comes to pricing, we creep it simple. Learn more about our plan."

39.    In August 2017, Google posted on Twitter, "Getting automatic credits back for unused data is kind of like finding a lucky penny (but way easier)."

40.    Numerous media outlets have relied on false statements by Google on its website and elsewhere to inform the public about the billing system.

41.    For instance, based upon Google's public marketing statements, *Forbes* reported that Project Fi "has straightforward pricing and usage info" and that users "set how much you think you'll need in data each month . . . and then are only charged for exactly how much you use."

42.    Based upon Google's public marketing statements, tech website The Verge reported in 2017, "[Y]ou pay $20 per month for your phone and $10 per GB of data that you use. That's pretty much it."

43.    Based upon Google's public marketing statements, tech website Androidcentral reported in 2018, "Project Fi is focused on simplified billing. You pay $20 per month for unlimited talk and texting, and a flat rate of $10 per gigabye of data used."

44.     Based upon Google's public marketing statements, *PC Magazine* reported in 2017, "Fi's plans can cost less than they appear to because you only get charged for the data you use."

**B.     Google Bills Its Customers for Data Service While Connected to WiFi**

45.     Rather than enabling customers to limit the expense of mobile data usage as promised, Google bills customers for data they access while they are attempting to avoid the use of mobile data altogether by connecting to a home or open WiFi network.

46.     In early August 2017, Plaintiff Gordon Beecher switched his cell phone and data service to Project Fi.

47.     Later that same month, Mr. Beecher began receiving notices from the Project Fi software on his mobile device reflecting his data usage. The data usage notices were not correct because they included data that Mr. Beecher had received while connected to WiFi networks.

48.     Each month, while connected to third-party (non-Project Fi) WiFi connections that are separately arranged or free, Mr. Beecher's mobile device has indicated that he accesses approximately 4-14 gigabytes of "WiFi data."

49.     For example, the data usage indicator on Mr. Beecher's mobile device confirms that he accessed only 2-3 gigabytes of data for one month via mobile wireless, while he accessed approximately 6-7 gigabytes of data while connected to WiFi services such as his home wireless network. A screenshot of Mr. Beecher's mobile device showing similar usage (3.11GB of "mobile data" and 6.03GB of "WiFi data") for the August-September 2017 billing cycle appears below:

1
2
3
4
5
6
7
8
9
10
11
12



13    50.    Nonetheless, Google tracked Mr. Beecher's total data use. A screenshot of Mr.

14 Beecher's mobile device showing that the Project Fi app billed Mr. Beecher despite his extensive use

15 of WiFi connections for the August-September 2017 billing cycle appears below:

16
17
18
19
20
21
22
23
24
25
26



27
28

51.    Because Google calculated charges based upon Mr. Beecher's total data usage even when he was connected to WiFi, Google wrongly charged Mr. Beecher. Google billed Mr. Beecher for the use of cellular data even when the mobile data feature on his mobile device was disabled, proving that Google billed Mr. Beecher for the use of data that he could not or should not have been receiving through Google's service.

52.    Google automatically charged Mr. Beecher's Google Payments account for his data use for August-September and the succeeding months.

53.    Google charged Mr. Beecher for the use of approximately 6-11 gigabytes per month, at $10 per gigabyte, that Mr. Beecher had obtained while connected to WiFi, resulting in overcharges totaling more than $200 over the first three months of his contract with Project Fi.

54.    Google's charges for data obtained while connected to WiFi were made without authorization and in violation of Google's contracts with its customers.

55.    Google's advertisements and charges were also deceptive because they would lead a reasonable customer to believe that Project Fi charges could be avoided by connecting to home or open WiFi networks when, in reality, Google was charging customers for the use of data even when customers were connected to WiFi. A reasonable customer relying on Google's advertising statements and billing documents would be misled into thinking that Project Fi gives the user control over the amount of cellular data used and that cellular data usage can be avoided by using WiFi networks. Further, Google has actively concealed the overcharge from its customers by misstating the basis for amounts billed and establishing a company policy of refusing to answer or address customer complaints relating to the overbilling.

56.    Over the course of multiple phone inquiries by Plaintiff during September, October, and November 2017 regarding the overbilling, Google failed to reveal or explain the defect in its billing system and failed to redress Plaintiff's billing disputes. During these phone calls, Google acknowledged that the billing errors were an issue that other users had reported and an issue known to Google.

57.    To discover the overcharge, a customer would have to inspect the data usage on his mobile device through the technical features of his operating system if possible or a third-party app,

1    compare it to Google's bill, and determine what portion of the billed charges arose while the mobile

2    device was connected to WiFi networks.

3        58.    Google's wrongful billing procedure is not limited to Mr. Beecher's account, but

4    extends across all users of the Project Fi wireless internet service, numbering in the thousands.

5        59.    Google has received complaints from other customers who were billed for data while

6    connected to WiFi, and despite knowing of the problem for many months, Google has failed to

7    rectify it.

8        60.    For example, in February 2017, a customer with the username arthurjguy reported on

9    Reddit.com, in the subreddit /r/ProjectFi, that Google was overbilling him by several gigabytes each

10   month. The customer contacted Google's customer support department, but Google failed to identify

11   the source of the problem or rectify it. An excerpt from this subreddit appears below:



**My data billing with Fi is ALWAYS wrong** self.ProjectFi

Submitted 11 months ago by arthurjguy

I'm 6 days into my billing cycle...

- My android settings say that I have used 484 MB of cell data
- The FI app says that I have used 601 MB of cell data
- The Fi website says this device has used 1.53 GB

Now, I do have 400 MB carried over from the previous billing cycle, but even with that, I'm still being over-billed no matter how you slice it. If it's off this bad a week in, it's going to get worse by the time I cycle is over.

My fiance and I both had 2 GB limits with T-mobile for the last 5 years and never once hit them, last month Fi said she used 7 GIGS. There's no way.

**20 comments**   share   save   hide   report

20       61.    In the comments to this post, Reddit user arthurjguy noted, "I did contact support, but

21   as with most of my chats with support about various issues, they've gotten no where [sic] fast."

22       62.    Similar reports have attracted wide publicity and are well known to Google. In mid-

23   2017, a Reddit user with the username Unusual_Sauce complained about unwanted cell data usage

24   while connected to WiFi on his Google-manufactured Android device, a Pixel XL mobile device:

25   "After updating to [Android operating system version 8.0] Oreo last night, I received a huge spike in

26   data usage, all the while being connected to WiFi. I contacted support and was told that they are

27   aware of the issue and are working on a fix."

28

63.    This post sparked considerable coverage on tech news websites. The site NotebookCheck.net News reported, "Android's standard behavior, when the user has both mobile data and WiFi enabled, is for the phone to default to using the WiFi when connected to a known network, but to switch to mobile data when out of range of the WiFi. It is this procedure which is being ignored by the operating system, causing users to deplete their data cap unknowingly."

64.    As tech website ZDNet reported, "A number of Oreo users are experiencing this issue . . . ." ZDNet also stated that the bug could be "costly for anyone on a limited plan if they're penalized for exceeding their monthly limit." ZDNet went on to state that "[t]he problem appears to stem from Mobile Data Always Active, a setting available in Developer Options. Normally this setting is disabled by default, but installing Oreo results in it being enabled by default. According to one user, Google for some reason enabled the setting by default during the Oreo developer preview, but didn't change it back before general release."

65.    Google itself has admitted that Google-made mobile devices incorrectly prioritize cellular data over WiFi, even when WiFi data is available. As tech website Bleeping Computer reported, "A Google spokesperson told Bleeping Computer the company is aware of the issue and is working on a fix."

66.    Publicly available version control reports for the Android Open Source Project confirm that Google employee Lorenzo Colitti enabled the "Mobile Data Always Active" for the Android operating system on January 16, 2017. This setting is located within the Developer Options which are ordinarily invisible on Android devices and therefore not reasonably accessible to Project Fi customers. Neither Google nor Project Fi advises customers that they can avoid cellular data usage by changing this setting. Upon information and belief, the concealed adjustment of this setting by Google was a contributing factor in the involuntary consumption of cellular data by customers of Google mobile devices and Project Fi, including Plaintiff. At the same time, disabling the "Mobile Data Always Active" developer setting has failed to remedy the problem for Plaintiff and other users.

67.    Public complaints and news reports suggest that upon the release of Android version 8.0 and 8.1 to Google-manufactured mobile devices such as those using Project Fi, the WiFi and cellular data connection systems on these mobile devices were full of bugs and error-prone. For

example, users widely reported that the mobile devices would crash their entire home WiFi networks, that the mobile devices would no longer connect to its previously working WiFi connections, that the mobile devices do not correctly assess WiFi signal strength, and that the use of a Virtual Private Network would interfere with the mobile device's previously working WiFi connections. Users also reported that their mobile devices would no longer connect to previously working 5GHz WiFi connections and reverted to the older 2.4GHz WiFi frequency.

68.     Similarly, consumers have posted widespread complaints, including complaints on Google product forums and other Google-monitored support websites, about cell data usage while the mobile device is connected to a working WiFi connection. For example, a consumer with the username Totoro posted on the Republic Wireless product forums in October 2017 that he was "noticing a little cell data usage even when I am solidly connected to WiFi. It appears to be about one Meg per day. Before Oreo, I was definitely using less cell data."

69.     As recently as January 2018, another customer named William Michael Cunningham reported in an online Project Fi Help Forum that he was being billed for data usage well in excess of the mobile data accessed on his mobile device, as recorded by his mobile device's data usage meter, going back at least as far as March 2017. Mr. Cunningham opened at least nine separate cases with Google's customer support department. Despite his repeated complaints, Google failed to identify the source of the problem or rectify it. Excerpts from Mr. Cunningham's forum posts appear below:





70.    Google has received scores if not hundreds of customer complaints from Project Fi subscribers and other customers using Google mobile devices arising from the improper tracking of and billing for cell data usage while their mobile devices are connected to WiFi networks. In late 2017, a Project Fi customer with the username mlinc46 posted on the Google Project Fi product help forum complaining about excessive billing and quoted from an email he received from a Project Fi representative named Zach: "The customers who experienced the issue you are reporting had instances of much larger amounts of data being used in the course of minutes to hours."

71.    Upon receiving customer complaints from Project Fi subscribers and other customers using Google mobile devices arising from the improper tracking of and billing for cell data usage while their mobile devices are connected to WiFi networks, Google has requested, received, and retained debugging logs and reports from Plaintiff and other customers containing technical information about their mobile devices.

72.    In isolated instances, Google has issued refunds or sent replacement mobile devices to consumers because they complained that their mobile devices billed for cellular data while they were

connected to a WiFi network. The replacement devices did not remedy the problem, and the refunds did not fully compensate customers for the overbilling. Project Fi has a significant problem with overbilling in violation of its contracts and California law that Google is unwilling or unable to fix.

## V.    CLASS ACTION ALLEGATIONS

73.    Plaintiff Gordon Beecher brings this action under Federal Rule of Civil Procedure 23(b)(2) and (b)(3) on his own behalf and on behalf of the following class of plaintiffs:

> All past and present subscribers of Project Fi mobile data services
> whose mobile devices have established a connection to one or more
> WiFi networks during the term of their Project Fi subscriptions.

74.    The persons in the class are so numerous that individual joinder of all members is impracticable under the circumstances of this case. Although the precise number of such persons is unknown, the exact size of the class is easily ascertainable as each class member can be identified by using Defendant's records. Plaintiff is informed and believes that there are many thousands of class members.

75.    There are common questions of law and fact specific to the class that predominate over any questions affecting individual members, including:

(a)    Whether Google's contract allows for it to charge for data services while customers are connected to WiFi networks;

(b)    Whether Google overcharges its Project Fi subscribers;

(c)    Whether such overcharges breach Google's contracts with its subscribers;

(d)    Whether Google concealed problems with its cellular data and billing systems from its subscribers;

(e)    Whether Google misrepresented its cellular data and billing practices to subscribers;

(f)    Whether Google's misrepresentations and omissions regarding its cellular data and billing practices were likely to deceive a reasonable person in violation of the CLRA, Cal. Civ. Code §1750 et seq.;

(g)    Whether Google violated the unlawful prong of the UCL, Cal. Bus. & Prof. Code §17200 et seq., by its violation of the CLRA;

(h)    Whether Google's misrepresentations and omissions regarding its cellular data and billing practices were likely to deceive a reasonable person in violation of the fraudulent prong of the UCL;

FIRST AMENDED CLASS ACTION COMPLAINT   - 14 -
No.: 5:18-cv-753
010729-11 1013438 V1

(i)     Whether Google's business practices, including the marketing and sale of Project Fi services, offend established public policy and cause harm to consumers that greatly outweighs any benefits associated with those practices;

(j)     Whether Google's misrepresentations and omissions regarding its cellular data and billing practices were likely to deceive a reasonable person in violation of the FAL, Cal. Bus. & Prof. Code §17500 et seq.;

(k)     Whether Google breached its Project Fi subscriber contracts regarding its cellular data and billing practices;

(l)     Whether Plaintiff and class members are entitled to damages, restitution, restitutionary disgorgement, equitable relief, and/or other relief; and

(m)     The amount and nature of such relief to be awarded to Plaintiff and the class.

76.     Plaintiff's claims are typical of the class's claims, as they arise out of the same course of conduct and the same legal theories as the rest of the class, and Plaintiff challenges the practices and course of conduct engaged in by Defendant with respect to the class as a whole.

77.     Excluded from the class are Defendant, its employees, co-conspirators, officers, directors, legal representatives, heirs, successors, and wholly or partly owned subsidiaries or affiliated companies; class counsel and their employees; and the judicial officers and associated court staff assigned to this case.

78.     Plaintiff will fairly and adequately protect the interests of the class. He will vigorously pursue the claims and has no antagonistic conflicts. Plaintiff has retained counsel who are able and experienced class action litigators and are familiar with representing plaintiffs in large-scale consumer and commercial claims.

79.     Google has acted or refused to act on grounds that apply generally to the class, and final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole. A class action is also appropriate because Google has acted and refused to take steps that are, upon information and belief, generally applicable to thousands of individuals, thereby making injunctive relief appropriate with respect to the class as a whole.

80.     Questions of law or fact common to class members predominate over any questions affecting only individual members. Resolution of this action on a class-wide basis is superior to other available methods and is a fair and efficient adjudication of the controversy because in the context of

this litigation no individual class member can justify the commitment of the large financial resources to vigorously prosecute a lawsuit against Google. Separate actions by individual class members would also create a risk of inconsistent or varying judgments, which could establish incompatible standards of conduct for Google and substantially impede or impair the ability of class members to pursue their claims. It is not anticipated that there would be difficulties in managing this case as a class action.

81.    Plaintiff reserves the right to amend all class allegations as appropriate, and to request any state law subclasses or other subclasses if necessary, upon completion of class-related discovery and motions for class certification.

82.    California law governs the claims of Plaintiff and the class because Google's Terms of Service provide, "The laws of California, U.S.A., excluding California's conflict of laws rules, will apply to any disputes arising out of or relating to these terms or the [Project Fi] Services."

### VI.    CLAIMS FOR RELIEF

### COUNT I
### VIOLATIONS OF THE CONSUMER LEGAL REMEDIES ACT
### (CAL. CIV. CODE § 1750, ET SEQ.)

83.    Plaintiff incorporates the allegations set forth above as if fully set forth herein.

84.    Defendant is a "person" under Cal. Civ. Code § 1761(c).

85.    Plaintiff is a "consumer," as defined by Cal. Civ. Code § 1761(d), who purchased the Project Fi service.

86.    Plaintiff has previously filed an affidavit that shows venue in this District remains proper, as required by Cal. Civ. Code § 1780(d).

87.    Google participated in unfair or deceptive acts or practices that violated the Consumer Legal Remedies Act ("CLRA"), Cal. Civ. Code § 1750, et seq., as described above and below. Defendant is directly liable for these violations of law.

88.    By failing to disclose and actively concealing the Project Fi overcharges, and by misrepresenting that consumers would not be charged for cellular data while connected to WiFi networks, Google engaged in deceptive business practices prohibited by the CLRA, Cal. Civ. Code § 1750, et seq., including (1) representing that Project Fi has characteristics, uses, benefits, and

qualities which it does not have, (2) representing that the Project Fi service is of a particular standard, quality, and grade when it is not, (3) advertising Project Fi with the intent not to bill customers for the service as advertised, (4) representing that a transaction involving Project Fi confers or involves rights, remedies, and obligations which it does not, and (5) representing that the subject of a transaction involving Project Fi has been supplied in accordance with a previous representation when it has not.

89.     As alleged above, Google made numerous material statements about the accuracy and scope of charges for its service that were either false or misleading.  Each of these statements contributed to the deceptive context of Google's unlawful advertising and representations as a whole.

90.     Google knew that the Project Fi service was miscalculating data usage and overcharging customers and was not suitable for providing mobile data on a pay-as-you-go basis to customers to the extent represented in promotional materials. Numerous consumers have complained to Google about this billing issue and related technical issues over a period of many months. Google nevertheless failed to disclose the defects in its service despite having a duty to do so.

91.     A reasonable consumer would not have paid as much as he or she did for Project Fi if Google had disclosed (i) that Google overcharged customers; (ii) that Google charged customers for the use of data service while customers were connected to WiFi networks; (iii) that Google was aware of and not adequately investigating problems with its billing and cellular data systems; and (iv) that Google did not comply with promotional statements regarding its cellular data and billing systems. Google has wrongfully billed customers and collected payment for data while customers were connected to WiFi.

92.     Google owed Plaintiff a duty to disclose the defective nature of the Project Fi system, including its miscalculation of data usage and overcharges because Google:

      a.   Possessed exclusive knowledge of the defects causing Project Fi to miscalculate data usage and overcharge customers;

      b.   Intentionally concealed the unlawful and misleading way in which customers were billed through a deceptive marketing campaign; and/or

      c.    Made incomplete representations about the quality and reliability of the cellular data and billing systems while purposefully withholding material facts from Plaintiff that contradicted these representations.

93.    Whether or not Google accurately bills for data usage is a fact that a reasonable consumer would consider important in selecting a mobile data service. When Plaintiff subscribed to Project Fi, he reasonably expected to be able to limit his data usage by using WiFi connections and not to be billed by Google for data usage while connected to WiFi networks.

94.    As a current Project Fi subscriber, Plaintiff faces an increased risk of future property loss that would not be present if Google had not marketed and sold its defective Project Fi service.

95.    Google's unfair or deceptive acts or practices were likely to and did in fact deceive reasonable consumers, including Plaintiff, about the billing practices.

96.    As a result of its violations of the CLRA detailed above, Google caused actual damage to Plaintiff and, if not stopped, will continue to harm Plaintiff.

97.    There is no adequate remedy at law for Google's continued overbilling for Project Fi services in violation of the CLRA, and these violations present a continuing risk to Plaintiff as well as to the general public.

98.    On or about April 6, 2018, Plaintiff sent a notice and demand letter via certified mail to Google's principal place of business in California, thereby satisfying Cal. Civ. Code § 1782(a). After thirty days have passed without Google's taking, or agreeing to take, appropriate corrective measures, Plaintiff may amend to seek damages on this claim.

99.    Plaintiff seeks an order enjoining Google's unfair or deceptive acts or practices, costs of Court, attorney's fees under Cal. Civ. Code § 1780(e), and any other just and proper relief available under the CLRA.

**COUNT II**
**VIOLATION OF THE CALIFORNIA UNFAIR COMPETITION LAW**
**(CAL. BUS. & PROF. CODE § 17200, ET SEQ.)**

100.    Plaintiff realleges and incorporates by reference all paragraphs alleged herein.

101.    Plaintiff asserts this claim on behalf of himself and members of the Class on behalf of all persons or entities that purchased the Project Fi mobile data service.

102.    California Business and Professions Code section 17200 prohibits any "unlawful, unfair, or fraudulent business act or practices." Google has engaged in unlawful, fraudulent, and unfair business acts and practices in violation of the UCL.

103.    Google has violated the unlawful prong of section 17200 by its violations of the Consumer Legal Remedies Act, CAL. CIV. CODE § 1750, et seq., as set forth in Count I by the acts and practices set forth in this Amended Complaint.

104.    Google has violated the fraudulent prong of section 17200 because the misrepresentations and omissions regarding the cellular data and billing system as set forth in this Amended Complaint were likely to deceive a reasonable consumer, and the information would be material to a reasonable consumer.

105.    Google has violated the unfair prong of section 17200 because the acts and practices set forth in the Amended Complaint, including the marketing and sale of services that miscalculate data usage and overbill customers, and Google's failure to adequately investigate, disclose and remedy, offend established public policy, and because the harm they cause to consumers greatly outweighs any benefits associated with those practices. Google's conduct has also impaired competition within the mobile data market and has prevented Plaintiff from making fully informed decisions about whether to purchase Project Fi services and/or the price to be paid to purchase Project Fi services.

106.    Plaintiff has suffered an injury in fact, including the loss of money or property, because of Google's unfair, unlawful and/or deceptive practices. As set forth in the allegations above, in purchasing Project Fi services, Plaintiff relied on the misrepresentations and/or omissions of Google with respect to how Google tracks and bills data usage. Google's representations turned out not to be true because Google tracks and bills for data service provided while the customer is connected to WiFi networks.  Had Plaintiff known this he would not have subscribed to Project Fi and/or paid as much for it. Moreover, Google has wrongfully billed Plaintiff and collected payment for services while he was connected to WiFi networks.

107.    All of the wrongful conduct alleged herein occurred, and continues to occur, in the conduct of Google's business. Google's wrongful conduct is part of a pattern or generalized course

of conduct that is still perpetuated and repeated, both in the State of California and nationwide. Google is fully aware of the way its billing system operates, the amount of data that Google and its partners provide to a given customer, when Google-manufactured mobile devices are accessing a WiFi connection, and whether the billing system calculates monthly charges based solely upon data obtained while the user is not connected to WiFi. Numerous consumers have complained to Google about this problem over a period of many months, but Google has failed to rectify it.

108.    Plaintiff requests that this Court enter such orders or judgments as may be necessary to enjoin Google from continuing their unfair, unlawful, and/or deceptive practices, and to restore to Plaintiff and members of the Class any money Google acquired by unfair competition, including restitution and/or restitutionary disgorgement, as provided in CAL. BUS. & PROF. CODE § 17203 and CAL. CIV. CODE § 3345; and for such other relief set forth below.

**COUNT III**
**VIOLATION OF THE CALIFORNIA FALSE ADVERTISING LAW**
**(CAL. BUS. & PROF. CODE § 17500, ET SEQ.)**

109.    Plaintiff realleges and incorporates by reference all paragraphs alleged herein.

110.    Plaintiff asserts this claim on behalf of themselves and members of the Class on behalf of any person or entity that purchased Project Fi services.

111.    California Business and Professions Code § 17500 states: "It is unlawful for any … corporation … with intent directly or indirectly to … perform services, professional or otherwise . . . to induce the public to enter into any obligation relating thereto, to make or disseminate or cause to be made or disseminated … from this state before the public in any state, in any newspaper or other publication, or any advertising device, … or in any other manner or means whatever, including over the Internet, any statement … which is untrue or misleading, and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading."

112.    Google caused to be made or disseminated through California and the United States, through advertising, marketing and other publications, statements that were untrue or misleading, and which were known, or which by the exercise of reasonable care should have been known to Google, to be untrue and misleading to consumers and Plaintiff.

113.    Google has violated section 17500 because the misrepresentations and omissions regarding its cellular data and billing practices as set forth in this Amended Complaint were material and likely to deceive a reasonable consumer.

114.    Plaintiff and members of the Class have suffered an injury in fact, including the loss of money or property, because of Google's unfair, unlawful and/or deceptive practices. In subscribing to Project Fi, Plaintiff relied on the misrepresentations and/or omissions of Google with respect to the affordability of Project Fi and the accuracy of its billing practices. Google's representations turned out not to be true because Google tracks and bills for data service provided while the user is connected to a WiFi network. Had Plaintiff known this, he would not have subscribed to Project Fi and/or paid as much for it. Moreover, Google has wrongfully billed Plaintiff and collected payment for services while he was connected to WiFi networks.

115.    Accordingly, the Plaintiff overpaid for Project Fi and did not receive the benefit of his bargain.

116.    All of the wrongful conduct alleged herein occurred, and continues to occur, in the course of Google's business. Google's wrongful conduct is part of a pattern or generalized course of conduct that is still perpetuated and repeated, both in the State of California and nationwide. Google is fully aware of the way its billing system operates, the amount of data that Google and its partners provide to a given customer, when Google-manufactured mobile devices are accessing a WiFi connection, and whether the billing system calculates monthly charges based solely upon data obtained while the user is not connected to WiFi. Numerous consumers have complained to Google about this problem over a period of many months, but Google has failed to rectify it.

117.    Plaintiff requests that this Court enter such orders or judgments as may be necessary to enjoin Google from continuing its unfair, unlawful, and/or deceptive practices and to restore to Plaintiff and members of the Class any money Google acquired by unfair competition, including restitution and/or restitutionary disgorgement, and for such other relief set forth below.

**COUNT IV**
**BREACH OF CONTRACT**

118.    Plaintiff incorporates by reference and reallege all paragraphs alleged herein.

119.   This Count is asserted on behalf of those plaintiffs and class members who purchased Project Fi services.

120.   By soliciting and obtaining Plaintiff's subscription to the Project Fi service, Google entered into a contract with Plaintiff.

121.   The Project Fi Terms of Service form part of that contract and bind Google.

122.   Through the Terms of Service, Google promises that customers will be charged only for their use of Google's products and services and promises not to charge for data use while customers are connected to WiFi.

123.   Through the Terms of Service, Google promises only to use information collected from devices to bill and collect payment for the Project Fi services.

124.   Despite these express obligations, Google has tracked its customers' data usage even while the customers are connected to WiFi.

125.   Google has therefore breached the contract with Plaintiff and the class.

126.   Accordingly, the Plaintiff overpaid for Project Fi and did not receive the benefit of his bargain.

127.   As a direct and proximate result of Google's breach of contract, Plaintiff and the Class have been damaged in an amount to be determined at trial, which shall include, but is not limited to, all compensatory damages, incidental and consequential damages, and other damages allowed by law.

128.   There is no adequate remedy at law for Google's continued overbilling for mobile data services in breach of its contract, and these breaches present a continuing risk to Plaintiff as well as to the public. Numerous consumers have complained to Google about this problem over a period of many months, but Google has failed to rectify it.

129.   Plaintiff requests that this Court enter such orders or judgments as may be necessary to enjoin Google from continuing its breaches of contract and to restore to Plaintiff and members of the Class any money Google acquired by way of breach, including restitution and/or restitutionary disgorgement, and for such other relief set forth below.

1

**PRAYER FOR RELIEF**

2        A.     Injunctive relief under the CLRA;[2]

3        B.     Restitution or restitutionary disgorgement as provided in Cal. Bus. & Prof. Code

4   § 17203 and Cal. Civ. Code § 3343;

5        C.     Injunctive relief, restitution and appropriate relief under Cal. Bus. & Prof. Code

6   § 17500;

7        D.     Compensatory damages, according to proof;

8        E.     Rescission of contracts with Google concerning the mobile data services;

9        F.     Punitive damages;

10       G.     Reasonable costs and expenses and attorneys' fees, including counsel and expert fees;

11  and

12       H.     Any other relief this Court determines to be necessary and appropriate.

13

**DEMAND FOR JURY TRIAL**

14      Plaintiff demands a trial by jury on all issues so triable.

15

16

17

18

19

20

21

22

23

24

25

26

27

---

[2] In this Amended Complaint, Plaintiffs seek no damages of any kind under the CLRA. Plaintiffs reserve the right to seek such damages in a future amended complaint.

28

FIRST AMENDED CLASS ACTION COMPLAINT    - 23 -
No.: 5:18-cv-753
010729-11 1013438 V1

1  DATED: April 6, 2018

2

3  By: /s/ Shana E. Scarlett
   Shana E. Scarlett (217895)
4  715 Hearst Avenue, Suite 202
   Berkeley, CA 94710
5  Telephone: (510) 725-3000
   Facsimile: (510) 725-3001
6  shanas@hbsslaw.com

7  Robert B. Carey (*pro hac vice*)
   rob@hbsslaw.com
8  John M. DeStefano (*pro hac vice*)
   johnd@hbsslaw.com
9  11 West Jefferson Street, Suite 1000
   Phoenix, AZ 85003
10 Telephone: (602) 840-5900
   Facsimile: (602) 840-3012
11

**HAGENS BERMAN SOBOL SHAPIRO LLP**

12 **NEGRETTI & ASSOCIATES PLC**
   Jonathan Negretti
13 jonathan@negrettilaw.com
   2415 E Camelback Rd, Suite 700
14 Phoenix, AZ 85016
   Telephone: (602) 531-3911
15

*Attorneys for Plaintiff and the Proposed Class*
16

17

18

19

20

21

22

23

24

25

26

27

28

1

## **CERTIFICATE OF SERVICE**

2         The undersigned hereby certifies that a true and accurate copy of the foregoing was filed

3    electronically via the Court's ECF system, on April 6, 2018.  Notice of electronic filing will be

4    sent to all parties by operation of the Court's electronic filing system.

5

6    DATED:  April 6, 2018

7                                                     _/s/ Shana Scarlett_____
                                                    Shana Scarlett
8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

FIRST AMENDED CLASS ACTION COMPLAINT    - 25 -
No.: 5:18-cv-753
010729-11 1013438 V1