1   COOLEY LLP
    MICHAEL G. RHODES (116127)
2   (rhodesmg@cooley.com)
    WHITTY SOMVICHIAN (194463)
3    (wsomvichian@cooley.com)
    KATHLYN A. QUERUBIN (275085)
4   (kquerubin@cooley.com)
    MAX ALDERMAN (318548)
5   (malderman@cooley.com)
    101 California Street, 5th Floor
6    San Francisco, CA  94111-5800
    Telephone:     (415) 693-2000
7   Facsimile:     (415) 693-2222

8   Attorneys for Defendant
    GOOGLE NORTH AMERICA INC.

9

10

11                UNITED STATES DISTRICT COURT

12               NORTHERN DISTRICT OF CALIFORNIA

13                      SAN JOSE DIVISION

14

15  GORDON BEECHER, an individual,          Case No.  5:18-cv-00753 BLF
     individually and on behalf of all others
16   similarly situated,                     GOOGLE NORTH AMERICA INC.'S
                                             NOTICE OF MOTION, MOTION TO
17              Plaintiff,                    DISMISS FIRST AMENDED COMPLAINT,
                                             AND MEMORANDUM OF POINTS AND
18       v.                                  AUTHORITIES

19  GOOGLE NORTH AMERICA INC., a            Date:      October 4, 2018
     Delaware corporation,                   Time:      9:00 a.m.
20                                           Courtroom: Courtroom 3, 5th Floor
                Defendant.                    Judge:     Hon. Beth L. Freeman
21

22

23

24

25

26

27

28

# Table of Contents

Page

Notice of Motion and Motion to Dismiss .................................................................. 1

Statement of Relief Sought ...................................................................................... 1

Statement of Issues to be Decided ......................................................................... 1

Memorandum of Points and Authorities ................................................................ 2

I.     Introduction ................................................................................................... 2

II.    Background ..................................................................................................... 3

    A.    Project Fi & Google's Disclosures Regarding Mobile/Wi-Fi Network Switching ............................................................................ 3

    B.    Plaintiff's Allegations ........................................................................ 3

    C.    Procedural History ............................................................................. 5

III.   Argument ....................................................................................................... 6

    A.    Plaintiffs' Fraud-Based Claims All Fail Because He Does Not Allege Reliance ........ 6

        1.    The FAC must meet the heightened pleading requirements of Rule 9(b) ............................................................................... 6

        2.    Plaintiff fails to allege any facts to show he relied on any alleged misstatement or omission ............................................. 7

    B.    The UCL claim must be dismissed in its entirety ............................. 9

    C.    Plaintiff fails to identify any specific contract term that was allegedly breached ............................................................................ 11

    D.    Plaintiff fails to state a CLRA claim for the additional reason that his allegations do not involve "goods or services" within the limited meaning of the statute ..................................................... 12

IV.   Request for Judicial Notice ......................................................................... 14

V.    Conclusion .................................................................................................... 16

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Berryman v. Merit Prop. Mgmt., Inc.*,
   152 Cal. App. 4th 1544 (2007) ...................................................................................................11

*Caldwell v. Caldwell*,
   No. C 05-4166 PJH, 2006 WL 618511 (N.D. Cal. Mar. 13, 2006) ...............................................15

*In re Facebook PPC Adver. Litig.*,
   Nos. 5:09-cv-03043-JF, 5:09-cv-03519-JF, 5:09-cv-03430-JF, 2010 WL 3341062
   (N.D. Cal. Aug. 25, 2010)............................................................................................................8

*Ferrington v. McAfee, Inc.*,
   No. 10-cv-01455-LHK, 2010 WL 3910169 (N.D. Cal. Oct. 5, 2010).....................................13, 14

*Frances Kenny Family Tr. v. World Savs. Bank FSB*,
   No. 04-3724 WHA, 2005 WL 106792 (N.D. Cal. Jan. 19, 2005) ..................................................15

*Frezza v. Google Inc.*,
   No. 5:12-CV-00237-RMW, 2013 WL 1736788 (N.D. Cal. Apr. 22, 2013)....................................11

*Gertz v. Toyota Motor Corp.*,
   No. CV-10-1089 PSG, 2010 WL 11549546 (C.D. Cal. Sept. 10, 2010).........................................9

*Hale v. Sharp Healthcare*,
   183 Cal. App. 4th 1373 (2010) ...............................................................................................9, 10

*Haskins v. Symantec Corp.*,
   No. 13-cv-01834-JST, 2013 WL 6234610 (N.D. Cal. Dec. 2, 2013) ............................................13

*Hovsepian v. Apple, Inc.*,
   No. 08-5788 JF (PVT), 2009 WL 5069144 (N.D. Cal. Dec. 17, 2009)............................................9

*In re iPhone Application Litig.*,
   844 F. Supp. 2d 1040 (N.D. Cal. 2012) ......................................................................................13

*In re Iphone Application Litig.*,
   No. 11-MD-02250-LHK, 2011 WL 4403963 (N.D. Cal. Sep. 20, 2011)....................................13

*Kearns v. Ford Motor Co.*,
   567 F.3d 1120 (9th Cir. 2009) .............................................................................................6, 8, 9

*Kinderstart.com, LLC v. Google, Inc.*,
   No. 06-2057 JF (RS), 2007 WL 831806 (N.D. Cal. Mar. 16, 2007)..............................................15

*Laster v. T-Mobile USA, Inc.*,
   407 F. Supp. 2d 1181 (S.D. Cal. 2005) ........................................................................7

*Meinhold v. Spectrum, L.P.*,
   No. S-07-00456 FCD EFB, 2007 WL 1456141 (E.D. Cal. May 16, 2007)....................8

*Miron v. Herbalife Int'l, Inc.*,
   11 F. App'x. 927 (9th Cir. 2001) ................................................................................11

*In re Nexus 6P Prod. Liab. Litig.*,
   No. 17-CV-02185-BLF, 2018 WL 1156861 (N.D. Cal. Mar. 5, 2018 .......................6, 8

*Pardini v. Unilever United States, Inc.*,
   961 F. Supp. 2d 1048 (N.D. Cal. 2013) ........................................................................9

*Parrish v. Nat'l Football League Players Ass'n*,
   534 F. Supp. 2d 1081 (N.D. Cal. 2007) ..................................................................7, 11

*Rojas-Lozano v. Google, Inc.*,
   159 F. Supp. 3d 1101 (N.D. Cal. 2016) .................................................................13, 14

*Singh v. Google Inc.*,
   No. 16-CV-03734-BLF, 2017 WL 2404986 (N.D. Cal. June 2, 2017) ......................6, 7

*Swartz v. KPMG LLP*,
   476 F.3d 756 (9th Cir. 2007) ......................................................................................15

*In re Tobacco II Cases*,
   46 Cal. 4th 298 (2009) .................................................................................................7

*U.S. v. Ritchie*,
   342 F.3d 903 (9th Cir. 2003) ......................................................................................15

*Ward General Ins. Services, Inc. v. Employers Fire Ins. Co.*,
   114 Cal. App. 4th 548, 557 (2003) .............................................................................13

*Woods v. Google, Inc.*,
   889 F. Supp. 2d 1182 (N.D. Cal. 2012) ......................................................................10

*In re Yahoo! Inc. Customer Data Sec. Breach Litig.*,
   No. 16-MD-02752-LHK, 2017 WL 3727318 (N.D. Cal. Aug. 30, 2017)......................7

*Yunker v. Pandora Media Inc.*,
   No. 11-CV-03113 JSW, 2013 WL 1282980 (N.D. Cal. Mar. 26, 2013)................13, 14

**Statutes**

Cal. Bus. & Prof. Code § 17200 .........................................................................................1

Cal. Bus. & Prof. Code § 17204 .........................................................................................7

Cooley LLP
ATTORNEYS AT LAW
SAN FRANCISCO

-iii-

GOOGLE'S MOTION TO DISMISS FAC
CASE NO. 5:18-CV-00753 BLF

Cal. Bus. & Prof. Code § 17500 ................................................................................1

Cal. Civ. Code § 1750. ............................................................................................1

Cal. Civ. Code § 1761(a)-(b). ...............................................................................12

Fed. R. Civ. Proc. 9(b) ...........................................................................................1

Fed. R. Civ. Proc. 12(b)(6) .........................................................................1, 3, 15

Fed. R. Evid. 201(b)...............................................................................................15

### NOTICE OF MOTION AND MOTION TO DISMISS

PLEASE TAKE NOTICE that on October 4, 2018 at 9:00 a.m., or as soon thereafter as the motion may be heard in Courtroom 3, 5th floor of the above-entitled court, located at 280 South 1st Street, San Jose, California, pursuant to Federal Rules of Civil Procedure 9(b) and 12(b)(6), defendant Google North America Inc. ("Google") will and hereby does move to dismiss the causes of action in plaintiff Gordon Beecher's ("Plaintiff") First Amended Class Action Complaint filed on April 6, 2018 (ECF No. 27) ("FAC"). This motion is based on this Notice of Motion and Motion, the accompanying Memorandum of Points and Authorities, the pleadings and evidence on file in this matter, oral argument of counsel, and such other materials and argument as may be presented in connection with the hearing of the motion. Google also respectfully requests that the Court take judicial notice of the document attached as Exhibit A to the Declaration of Kathlyn Querubin in Support of Google's Motion to Dismiss ("Querubin Decl.").

### STATEMENT OF RELIEF SOUGHT

Google respectfully seeks an order dismissing with prejudice the FAC's causes of action for failure to state a claim upon which relief can be granted.

### STATEMENT OF ISSUES TO BE DECIDED

1.      Whether Plaintiff's claims under the Consumer Legal Remedies Act, Cal. Civ. Code § 1750, *et seq.* ("CLRA"), California's Unfair Competition Law, Cal. Bus. & Prof. Code § 17200, *et seq.* ("UCL"), and California's False Advertising Law, Cal. Bus. & Prof. Code § 17500, *et seq.* ("FAL") should be dismissed, where Plaintiff fails to allege that he reviewed or relied on any alleged misleading statement.

2.      Whether Plaintiff states a claim for breach of contract, where he fails to identify any specific contract term that Google allegedly breached.

3.      Whether Plaintiff states a claim under the CLRA, where his claim involves the operation of software in Project Fi and does not involve a tangible good or service.

4.      Whether the Court should take judicial notice of the document attached as Exhibit A to the Declaration of Kathlyn Querubin in support of Google's Motion to Dismiss.

**MEMORANDUM OF POINTS AND AUTHORITIES**

## I.   INTRODUCTION

Google provides a mobile data plan called Project Fi in which users are charged a particular amount for each gigabyte of mobile data that they use on their mobile devices. Plaintiff claims that when users are connected to Wi-Fi, Google must always and immediately switch users from using mobile data to Wi-Fi data, so that users "will ***never*** be billed for data while connected to WiFi." (FAC ¶ 23 (emphasis added).) But Google does not make any such promise to users that Wi-Fi data will be used exclusively and immediately when they are connected to a Wi-Fi network. Indeed, when the extraneous allegations of the Complaint are set aside, it contains only one reference to one Google statement that touches on Wi-Fi at all (FAC ¶ 24), which does not support the obligation that Plaintiff seeks to impose, as discussed below.

Regardless, for purposes of this Motion, this lone statement cannot support Plaintiff's fraud-based claims under the UCL, FAL, and CLRA for the simple reason that Plaintiff does not allege that he relied on it in choosing Project Fi or even that he saw it at all. This glaring omission mandates dismissal under any pleading standard and certainly under the heightened pleading standard of Rule 9(b) that applies to Plaintiff's fraud-based claims. Nor can the statement support Plaintiff's breach of contract claim, because it appears in an online FAQ and is not part of the Project Fi Terms of Service that Plaintiff acknowledges comprise his contract with Google. Even if the Court were to ignore these fatal defects, Plaintiff's claims fail for additional reasons. With regard to his UCL claim, Plaintiff does not identify any conduct that could be deemed independently "unfair" or "unlawful" and merely parrots the same deficient allegations from his other claims. Further, Plaintiff's CLRA claim should be dismissed for the additional reason that Project Fi is neither a tangible good nor a service within the limited meaning of the statute.

For all these reasons, Google respectfully requests that the Court dismiss the FAC in its entirety as a matter of law with prejudice.

## II.   BACKGROUND[1]

### A.   Project Fi & Google's Disclosures Regarding Mobile/Wi-Fi Network Switching.

This case involves Project Fi, Google's mobile phone and data service. Project Fi allows users with certain supported mobile devices to get access to mobile data on a pay-as-you go basis. (FAC ¶ 11.)[2] As Plaintiff references in his Complaint, at any given time, a user's mobile device may be connected to a mobile network provided through Project Fi, or may be connected to a Wi-Fi network from some other source, or to both. If users have access to both mobile networks and Wi-Fi connections, Project Fi's systems will choose the connection it determines will give users the best experience. For example, Google explains with respect to calls: "If I have both Wi-Fi and cell connections, will my call go over Wi-Fi or a cell network? When both network types are available, Project Fi will route your call over whichever network we determine will give you the best experience." (*See* Request for Judicial Notice, *infra* at 14; *see also* Querubin Decl. ¶ 2, Ex. A.) Similarly, Google explains that when a Wi-Fi connection weakens or drops, Project Fi "seamlessly transitions your call to a cellular network (if one is available)" so the user's experience is uninterrupted. (*Id.* [FAQ: "What happens if I start a call over Wi-Fi and then lose my Wi-Fi connection?"].) Google thus makes clear to Project Fi users that Wi-Fi connections are not always used, even where they are available to the user at a given time.[3]

### B.   Plaintiff's Allegations.

Plaintiff Gordon Beecher alleges that he signed up for Project Fi in early August 2017. (FAC ¶ 46.) Plaintiff claims that from August to November 2017, Google did not switch him from using

---

[1] As it must under Federal Rule of Civil Procedure 12(b)(6), Google takes the allegations of the FAC as true for purposes of this Motion only.

[2] Project Fi differs from many other mobile data plans because it aims to put users on the best available network between Wi-Fi and three different mobile data networks. (Querubin Decl. ¶ 2, Ex. A) [FAQ: "What is unique about Project Fi's network?"].) This means that when there are multiple carriers available, Project Fi, when coupled with a supported device, automatically moves the user to a suitable connection available on one of Google's three partner mobile networks. (*Id.* ("[I]f your current network is providing weak or no coverage, we'll adjust in real time to find you a stronger connection.") [FAQ: "What determines when Project Fi moves me between cellular networks?"].)

[3] Similarly, when multiple Wi-Fi connections are available, Google explains to users that Project Fi uses a "network quality database" to determine which available Wi-Fi network to connect the user to. (*Id.* [FAQ: "What types of Wi-Fi hotspots will Project Fi automatically connect me to?"]; *see also* FAC ¶ 18 (describing how mobile users can "mak[e] use of a home or open WiFi connection").)

mobile data to Wi-Fi data in all instances when he was connected to Wi-Fi networks, thus resulting in "overcharges." (*Id*. ¶¶ 2-3, 47-53.) Plaintiff alleges that "thousands" of Project Fi users were similarly "overcharged." (*Id*. ¶ 58, 91.) In support of this contention, Plaintiff cites to certain online articles that describe the purported problem as a "bug" in the Android operating system installed on mobile devices. (*Id*. ¶¶ 63-64.)

Plaintiff claims that he and other Project Fi users were misled to believe that they would never be billed for mobile data at any time when they also have a Wi-Fi connection. To support this claim, Plaintiff quotes a statement from a Project Fi FAQ webpage (*id*. ¶ 24), which states: "Am I charged for data usage when I'm connected to an open Wi-Fi hotspot or my home Wi-Fi? No you are not charged for the data you use when connected to open or home Wi-Fi. We only charge $10 per GB for the cellular data you use." (*See* Querubin Decl. Ex. A) When the two sentences of the answer are read together, the first sentence plainly refers to ***Wi-Fi*** "data usage when [users are] connected to an open Wi-Fi hotspot or [a] home Wi-Fi." That is, users are not charged for Wi-Fi data usage when they are connected to a Wi-Fi network, but Google will still charge for "the cellular data you use" if mobile data continues to be used when Wi-Fi networks are available. This is consistent with the overall context of the FAQs, which clarify that mobile data may be used instead of a Wi-Fi connection for various reasons, as discussed above. (*See* discussion *supra* at p.3.)

In other paragraphs, Plaintiff quotes from various other Google statements that he claims create a misleading impression that Project Fi users will never be charged for cellular data while connected to Wi-Fi. (*See, e.g.*, *id*. ¶¶ 20-21 ("Through early 2018, Google's [Project Fi] homepage . . . . stated . . . : 'Never pay for unused data. Mmm . . . sweet. $10/GB for data you use and credit back for data you don't. No contracts and no sneaky fees. Immediately below that text, a link to 'Plan Details' leads to a page that states 'Never pay for unused data' and 'Date $10/GB' in large print."); ¶ 22 ("Google's [Project Fi] homepage . . . states that the plan 'makes saving twice as sweet'" and assures customers that "Bill Protection makes sure you're never paying for data you don't need.'").) But none of these statements even addresses Wi-Fi, much less the specific obligation that Plaintiff purports to impose on Google to never charge users for cellular data when Wi-Fi networks are available.

Significantly, nowhere in the FAC does Plaintiff allege that he actually saw or relied on any of the purportedly misleading statements referenced in the Complaint. Plaintiff makes the boilerplate allegation that he "relied on the misrepresentations and/or omissions of Google with respect to how Google tracks and bills data usage." (*Id*. ¶ 106; *see also id.* ¶ 114.) But Plaintiff does not specify which alleged misrepresentations and/or omissions he may have seen or relied on in deciding to become a Project Fi user, if any.

Plaintiff also claims that Google's practices violate the Terms of Service between Google and Project Fi users because Google allegedly "promises not to charge for data use while customers are connected to Wi-Fi." (*Id.* ¶ 122.) In support of this contention, Plaintiff quotes several terms of Project Fi's Terms of Service. (*Id.* ¶ 14 ("Under the Terms of Service, Google requires users only 'to pay all applicable charges for the Services you use.'"); *id.* ¶ 15 ("The Terms of Service authorize Google to 'automatically collect payments of all charges associated with the use of the Services [i.e., Google's products and services] from your designated payment method.'"); *id.* ¶ 16 ("[T]hrough the Terms of Service, Google promises that it will use information collected from customers' devices to '[b]ill you and collect payment for the Services and devices that you [customers] purchased.").) Tellingly, none of these terms contain any promise by Google that Project Fi users will be switched from using mobile data to Wi-Fi data every time that they are connected to Wi-Fi or that users "will never be billed for data while connected to WiFi." (*Id.* ¶ 23.).

## C.     Procedural History

Plaintiff filed his original complaint on February 5, 2018, alleging that Google incorrectly charged Plaintiff for data he received from "unrelated" or "other data service providers," and asserting causes of action under the UCL, FAL, CLRA, and for breach of contract. (ECF No. 1 ¶¶ 1, 44, 50-51.) Pursuant to a stipulation between the parties, Plaintiff filed the FAC on April 6, 2018. In the FAC, Plaintiff abandons the theory he pursued in his original complaint, and now alleges a new theory as described above.

## III.   ARGUMENT

### A.   Plaintiffs' Fraud-Based Claims All Fail Because He Does Not Allege Reliance.

#### 1.   The FAC must meet the heightened pleading requirements of Rule 9(b).

When a complaint "allege[s] a unified course of fraudulent conduct and rel[ies] entirely on that course of conduct as the basis of that claim . . . the claim is said to be 'grounded in fraud' or to 'sound in fraud,' and the pleading . . . as a whole must satisfy the particularity requirement of Rule 9(b)." *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1125 (9th Cir. 2009) (citation omitted). Claims under the UCL, FAL, and CLRA based on alleged misleading statements in marketing materials must therefore meet the heightened pleading standards of Rule 9(b). *See, e.g.*, *Kearns*, 567 F.3d at 1125 (holding that Rule 9(b) applies to CLRA and UCL claims based on misstatements in a car dealership's advertising materials); *In re Nexus 6P Prod. Liab. Litig.*, No. 17-CV-02185-BLF, 2018 WL 1156861, at *40 (N.D. Cal. Mar. 5, 2018) (Freeman, J.) (holding that Rule 9(b) applies to CLRA claims based on alleged misleading advertising); *Singh v. Google Inc.*, No. 16-CV-03734-BLF, 2017 WL 2404986, at *5 (N.D. Cal. June 2, 2017) (Freeman, J.) (holding that Rule 9(b) applies to UCL, FAL, and other fraud-based claims).

The FAC falls squarely within this established rule because it is based entirely on the allegation that Google misled Project Fi users to believe that they would never be billed for cellular data while connected to Wi-Fi. *See, e.g.*, FAC ¶ 19 (alleging that "Google falsely assures customers that they will not be billed for data they do not receive or need from Google, and then bills customers for data usage while they are accessing a WiFi connection that is independent of Google and its affiliated networks"); *id*. ¶ 55 (alleging that "Google's advertisement and charges were . . . deceptive because they would lead a reasonable customer to believe that Project Fi charges could be avoided by connecting to home or open WiFi networks when, in reality, Google was charging customers for the use of data even when customers were connected to WiFi . . . "). Given these repeated characterizations, there can be little doubt that the FAC must meet the heightened pleading standards under Rule 9(b).

**2.     Plaintiff fails to allege any facts to show he relied on any alleged misstatement or omission.**

The FAC falls far short of Rule 9(b)'s heightened pleading standards (and indeed, even the basic pleading requirements of Rule 8) because Plaintiff does not even allege that he saw any of the alleged misstatements at issue. As a rudimentary matter, "plaintiffs in misrepresentation cases must allege that they actually read the challenged representations" in order to state a claim. *In re Yahoo! Inc. Customer Data Sec. Breach Litig*., No. 16-MD-02752-LHK, 2017 WL 3727318, at *27 (N.D. Cal. Aug. 30, 2017) (citation omitted).[4] It is insufficient for Plaintiff merely to identify particular statements alleged to be misleading without further alleging that he actually saw and relied on those purported misstatements.[5] For example, in *Laster v. T-Mobile USA, Inc.*, 407 F. Supp. 2d 1181 (S.D. Cal. 2005), the court dismissed the UCL and FAL claims at issue, explaining: "While plaintiffs meticulously describe the allegedly misleading advertisements . . . none of the named plaintiffs allege that they saw, read, or in any way relied on the advertisements; nor do they allege that they entered into the transaction *as a result* of those advertisements." *Id*. at 1194 (emphasis in original). *See also Parrish v. Nat'l Football League Players Ass'n*, 534 F. Supp. 2d 1081, 1093-94 (N.D. Cal. 2007) (dismissing UCL claims where plaintiffs identified the specific misleading correspondence and the defendant's website that contained alleged misstatements but failed to allege having ever seen either).

These same deficiencies plague Plaintiff's claims here. Plaintiff quotes a number of Google statements in support of his fraud-based claims. (*See, e.g.*, FAC ¶ 20 ("Through early 2018, Google's home page for the mobile data plan stated in large, bold type: 'Never pay for unused data. Mmm...sweet. $10/GB for data you use and credit back for data you don't. No contracts and no

---

[4] Plaintiff must also allege that relied to his detriment on the alleged misstatements. *See, e.g., Singh*, 2017 WL 2404986, at *5 ("a class representative proceeding on a claim of misrepresentation as the basis of his or her UCL action must demonstrate actual reliance," which may be established "by showing that in its absence the plaintiff in all reasonable probability would not have engaged in the injury-producing conduct")). Here, Plaintiff does not even allege that he ever saw the alleged misstatements, let alone the additional facts needed to demonstrate actual reliance.

[5] In this regard, Rule of Civil Procedure 9(b) is consistent with and reinforces the substantive law of the UCL, which requires that "a Plaintiff must plead and prove actual reliance to satisfy the standing requirement of section 17204." *See In re Tobacco II Cases*, 46 Cal. 4th 298, 328 (2009).

sneaky fees."); *see also id.* ¶¶ 21-39.) But he never identifies a single alleged misstatement that *he* actually saw and relied on in deciding whether to use Project Fi. This failure to identify the specific statements *he* actually saw and how *he* relied to his detriment on such statements mandates dismissal as a matter of law.

The boilerplate allegations in FAC paragraphs 106 and 114 do not get Plaintiff any closer to stating a claim. Plaintiff cannot satisfy Rule 9(b) by merely stating in conclusory terms that he relied on some unidentified misrepresentations and/or omissions. Indeed, the lack of specificity is particularly problematic here because the FAC refers to a number of Google statements, many of which are general marketing statements that could not possibly support any sort of claim. (*See, e.g.*, FAC ¶ 22 ("Google's home page for the mobile data plan currently states that the plan 'makes saving twice as sweet. . . .'"); *id.* ¶ 27 ("In 2015, Google published a promotional video stating that Project Fi offers 'prices that make sense, and tech that just works.'"); *id.* ¶ 38 ("On Halloween 2017, Google posted on Twitter, 'When it comes to pricing, we creep it simple. Learn more about out plan.'"); *id.* ¶ 39 ("In August 2017, Google posted on Twitter, 'Getting automatic credits back for unused data is kind of like finding a lucky penny (but way easier).'").) Because the FAC states in vague terms that Plaintiff relied on some unidentified "misrepresentations and/or omissions," it is entirely unclear whether Plaintiff's purported claim of reliance is based on these general marketing statements or something else. Rule 9(b) prohibits this sort of pleading. *See In re Nexus 6P Prod. Liab. Litig.*, 2018 WL 1156861, at *40 (dismissing fraud-based UCL, CLRA, and FAL claims where plaintiff failed to specify which statements he actually saw and relied on).

Even if the Court were simply to assume that these vague pronouncements refer to *all* of the statements referenced in the FAC (an assumption that Rule 9(b) forbids), these paragraphs would still be insufficient because they contain none of the specific information needed under Rule 9(b), including the "who, what, when, where, and how" of the alleged fraudulent conduct (to say nothing of plaintiff's reliance). *Id. See also Kearns*, 567 F.3d at 1124-26; *see also Meinhold v. Spectrum, L.P.*, No. S-07-00456 FCD EFB, 2007 WL 1456141, at *6 (E.D. Cal. May 16, 2007) (dismissing UCL and FAL claims where plaintiff did not allege "when she saw" the alleged misleading statements); *In re Facebook PPC Adver. Litig.*, Nos. 5:09-cv-03043-JF, 5:09-cv-03519-JF, 5:09-cv-

03430-JF, 2010 WL 3341062, at *9-10 (N.D. Cal. Aug. 25, 2010) (finding that although plaintiffs had identified specific misrepresentations in their pleadings, the failure to plead when they saw these misrepresentations required dismissal because "[t]he timing of the statements is critical, as Plaintiffs cannot establish reliance on these statements if the statements did not exist at the time of contracting"). The omission of these basic facts is all the more glaring, given that the FAC is Plaintiff's second effort to plead a viable claim, and counsel are well aware of the applicable requirements. *See Gertz v. Toyota Motor Corp.*, No. CV-10-1089 PSG (VBKx), 2010 WL 11549546, at *3 (C.D. Cal. Sept. 10, 2010) (dismissing CLRA, FAL, and UCL claims for failure to meet the requirements of Rule 9(b) in a case handled by the Hagen Berman firm); *Pardini v. Unilever United States, Inc.*, 961 F. Supp. 2d 1048, 1060 (N.D. Cal. 2013) (dismissing UCL, CLRA, and fraud claims for failure to plead reliance in a case handled by the Hagens Berman firm).

For all these reasons, Plaintiff's fraud-based CLRA, UCL, and FAL claims must be dismissed with prejudice as a matter of law.

### B.    The UCL claim must be dismissed in its entirety.

The failures of pleading above require dismissal of Plaintiff's UCL claims in their entirety, including under the "unfair" and "unlawful" prongs of the statute. The Ninth Circuit has held that where, as here, a UCL complaint is "grounded in fraud," the "*entire complaint* must . . . be pleaded with particularity." *Kearns*, 567 F.3d at 1126-27 (emphasis added). In *Kearns*, the Court rejected the plaintiffs' argument that their UCL claim for "unfair" conduct should be considered separately and under different standards from their UCL claim for "fraudulent" conduct because all claims were based on the same facts and thus "no error was committed by not separately analyzing [the plaintiff's] claims under the unfairness prong of the UCL." *Id.*; *see also Hovsepian v. Apple, Inc.*, No. 08-5788 JF (PVT), 2009 WL 5069144, at *4-6 (N.D. Cal. Dec. 17, 2009) (applying *Kearns* and dismissing UCL claim brought under both "fraudulent" and "unfair" prongs for failure to meet Rule 9(b)).

Similarly, the California Court of Appeals has held that claims brought under the "unlawful" prong must rise or fall with the UCL claim as a whole where the core allegations are based on misleading misstatements or omissions. In *Hale v. Sharp Healthcare*, 183 Cal. App. 4th 1373

(2010), the plaintiff claimed that the UCL reliance requirement set forth in *In re Tobacco II* applies only to a claim under the "fraudulent" prong of the UCL and not to claims brought under the "unlawful" prong. The Court of Appeal rejected this argument, explaining:

> Construing the phrase "as a result of" in Business and Professions Code section 17204 in light of Proposition 64's intention to limit private enforcement actions under the UCL, we conclude the reasoning of *Tobacco II* applies equally to the "unlawful" prong of the UCL, when, as here, the predicate unlawful conduct is misrepresentation.

*Id.* at 1385.

Here, the "fraudulent" and "unfair" conduct alleged in the FAC both flow from the same core assertion, repeated and emphasized throughout the complaint, that Google misled Project Fi users to believe that they would never use and be charged for cellular data when connected to Wi-Fi. For example, to support his claim of "unfair" conduct, Plaintiff complains about the "marketing and sales" of Project Fi, "Google's failure to . . . disclose" facts, and being "prevented Plaintiff from making fully informed decisions" about using Project Fi. (FAC ¶ 105.) These allegations merely restate the theory of alleged "fraudulent" conduct and are deficient for the same reasons discussed above.

To the extent Plaintiff is claiming that Google's alleged practices—as opposed to Google's disclosures of those practices—are somehow "unfair," he would have to establish a "legal right" ***never*** to be charged for cellular data when Wi-Fi connections are available. *Woods v. Google, Inc.,* 889 F. Supp. 2d 1182, 1195 (N.D. Cal. 2012) (noting that plaintiffs must plead facts showing that they "had a legal right . . . that was violated" to "show any cognizable injury" under the unfair prong of the UCL). As discussed *infra* on pages 10-12, however, Plaintiff fails to allege any facts showing that Google had any such contractual obligation. Nor does Plaintiff identify any statutory or other basis for such a "right," which would be illogical given the numerous circumstances in which it may be necessary or preferable to continue using cellular data when Wi-Fi connections are available. Accordingly, Plaintiff has "failed to state a claim under the unfair prong of the UCL," even if the Court were to consider his "unfair" allegations separately from his theory of "fraudulent" conduct. *Id*.

Moreover, Plaintiff's "unlawful" prong claim must be dismissed because it relies entirely on

the CLRA and FAL claims in the FAC (FAC ¶ 102), which themselves fail as a matter of law for the reasons discussed herein. *Berryman v. Merit Prop. Mgmt., Inc.*, 152 Cal. App. 4th 1544, 54, 61 (2007) (affirming dismissal of UCL claim based on violation of underlying law for which plaintiff did not state a claim).

### C.   Plaintiff fails to identify any specific contract term that was allegedly breached.

To state a viable breach of contract claim, a plaintiff must, of course, identify the specific contract terms that were allegedly breached. *See, e.g., Frezza v. Google Inc.*, No. 5:12-CV-00237-RMW, 2013 WL 1736788, at *3 (N.D. Cal. Apr. 22, 2013) (dismissing breach of contract claim where plaintiffs failed to "present the contractual terms agreed upon" that were allegedly breached); *Miron v. Herbalife Int'l, Inc.*, 11 F. App'x. 927, 929 (9th Cir. 2001) (affirming dismissal of contract claim where the plaintiff "failed to allege any provision of the contract which supports their claim").

The FAC fails to meet this fundamental requirement. Plaintiff claims that, "[t]hrough the Terms of Service, Google promises that customers will be charged only for their use of Google's products and services[6] and ***promises not to charge for data use while customers are connected to WiFi.***" (FAC ¶ 122.) But while Plaintiff quotes several terms from the Project Fi Terms of Service, none of them reflect the supposed contractual commitment by Google never to "charge for data use while customers are connected to Wi-Fi." (*See, e.g., id.* ¶¶ 14-16.) Indeed, the only Google statement referring to Wi-Fi connections that Plaintiff can point to is not made "[t]hrough the [Project Fi] Terms of Service" but in a FAQ webpage outside of the Terms of Service. As Plaintiff alleges, Google's statement regarding Wi-Fi connections is contained in the "response to [a] question" under a particular "heading" at "the Frequently Asked Questions link" for Project Fi. (*Id.* ¶ 24.) Plaintiff does not allege that this FAQ constitutes part of the contract, and thus cannot rely on it to support his breach of contract claim. *Parrish*, 534 F. Supp. 2d at 1095 (where "statements were not part of any

---

[6] Plaintiff does not allege any breach of the alleged contractual obligation to charge only for "Google's products and services." (FAC ¶ 13.) Rather, the gravamen of the FAC is that Google "overcharged" him for his use of cellular data—a Google service. (*See, e.g.*, FAC ¶ 53 ("Google charged Mr. Beecher ***for the use of 6-11 gigabytes per month***, at $10 a gigabyte, that Mr. Beecher obtained while connected to WiFi, resulting in overcharges totaling more than $200 over the first three months of his contract with Project Fi."); *id.* ¶ 55 (alleging that "Google was charging customers ***for the use of data*** even when customers were connected to WiFi.").)

contracts . . . plaintiffs cannot rely on them to allege the terms of any contract.").

Moreover, even if FAQs could be deemed to be enforceable contract terms (which they are not), Google's FAQs actually undercut Plaintiff's claim by explaining (in statements that Plaintiff strategically ignores) that there are instances when Google may connect users to mobile data even when a Wi-Fi network is available (for example, when a Wi-Fi connection is weak and Google's technology indicates that the user will get a better connection from an available cellular network). (*See* discussion *supra* at p.3.) Further, as Google explains: "No you are not charged for the data you use when connected to open or home Wi-Fi. ***We only charge $10 per GB for the cellular data you use***." (FAC ¶ 24.) Plaintiff does not allege any violation of this statement, even if it were part of the contract. Indeed, Plaintiff has abandoned his prior claim that he was charged for the Wi-Fi data he used when connected to a Wi-Fi network, and now alleges that he was only charged for the ***cellular data*** he used in that circumstance. *See id*. ¶ 51 (alleging that "Google billed Plaintiff for the use of ***cellular data***"); *id*. ¶ 71 complaining about "billing for ***cell data*** usage while … mobile devices are connected to WiFi networks"; *id*. ¶ 66 (complaining about the "involuntary consumption of ***cellular data***") (emphases added). The alleged charges in this case are therefore entirely consistent with Google's disclosure that "[w]e only charge $10 per GB for the cellular data you use." (*Id*. ¶ 24.)

Accordingly, Plaintiff fails to state a claim for breach of contract, and that claim must be dismissed.

### D. Plaintiff fails to state a CLRA claim for the additional reason that his allegations do not involve "goods or services" within the limited meaning of the statute.

In addition to Plaintiff's failure to plead his CLRA claim with the particularity required by Rule 9(b), this claim fails for a separate and independent reason because the alleged "unfair or deceptive acts or practices" in the FAC do not involve "the sale or lease of goods or services" within the meaning of the CLRA. Cal. Civ. C. § 1770(a). Under the CLRA, "goods" are limited to "tangible chattels," while "services" are defined as "work, labor, and services for other than a commercial or business use, including services furnished in connection with the sale or repair of goods." Cal. Civ. Code. § 1761(a)-(b).

Courts applying these statutory terms consistently hold that software and systems are not

"goods" because "software and systems are not 'tangible' property in the common sense understanding of the word." *Ferrington v. McAfee, Inc.*, No. 10-cv-01455-LHK, 2010 WL 3910169, at *18 (N.D. Cal. Oct. 5, 2010) (quoting *Ward General Ins. Services, Inc. v. Employers Fire Ins. Co.*, 114 Cal. App. 4th 548, 557 (2003)) (internal quotation marks omitted).[7] Nor is a claim involving the operation of software considered "services" under the CLRA. For example, *In re iPhone Application Litigation*, No. 11-MD-02250-LHK, 2011 WL 4403963, at *2 (N.D. Cal. Sep. 20, 2011), involved a claim alleging that the "design of the iOS system" and "the design of the iDevices" [a defined term that included iPhones] caused harm to the plaintiffs in the case. Judge Koh held that these allegations failed to state a CLRA claim because they involved "software, i.e. the iOS operating system on iDevices. Software is neither a 'good' nor a 'service' within the meaning of the CLRA." *Id*. at *10.[8] Other courts have similarly rejected CLRA claims involving the operation of software. *See e.g., Yunker v. Pandora Media Inc.*, No. 11-CV-03113 JSW, 2013 WL 1282980, at *13 (N.D. Cal. Mar. 26, 2013) (holding that the CLRA does not apply to a claim involving the operation of the Pandora App installed on mobile devices); *Rojas-Lozano v. Google, Inc.*, 159 F. Supp. 3d 1101, 1117 (N.D. Cal. 2016) (holding that the CLRA does not apply to a claim involving the operation of "reCAPTCHA" software used in the log-in process for online services and noting that "the Court is unaware of even one [case] that holds that software utilized entirely online constitutes a CLRA good or service").

Similarly, here, Plaintiff's CLRA claim is premised on purported harm caused by the operation of software and systems associated with Project Fi. For example, Plaintiff alleges that "instead of tracking the data customers receive when not connected to WiFi, Google's *software* tracks the data service that customers receive at all times and bills them for it." (FAC ¶ 3) (emphasis

---

[7] In *Haskins v. Symantec Corp.*, No. 13-cv-01834-JST, 2013 WL 6234610, at *10 (N.D. Cal. Dec. 2, 2013), the Court held that software is a "good" under the CLRA where it can be purchased as a standalone product on a computer disk or other physical form. Here the software and systems at issue cannot be purchased in any such form, and Plaintiff does not try to allege as much.

[8] Judge Koh subsequently considered an amended complaint in the case and found that the amended complaint adequately stated a claim because plaintiffs added new allegations that implicated the "specific functionality of the device" and the "sale of a good," not just the "downloading of free software." *In re iPhone Application Litig.*, 844 F. Supp. 2d 1040, 1071 (N.D. Cal. 2012). Plaintiff makes no such allegations here.

added). Plaintiff further alleges that "the Project Fi *software* on his mobile device" created notices that "were not correct because they included data that Mr. Beecher had received while connected to WiFi networks." (*Id*. ¶ 47) (emphasis added). And in the new allegation added to the FAC, Plaintiff repeatedly emphasizes that his claims are based on purported issues with the operation of the Android operating system on his phone. (*Id*. ¶ 62 (alleging that errors in the "[Android operating system 8.0] Oreo" resulted in a "huge spike in data usage") (alteration in original); ¶¶ 64-66 (alleging that a "bug" concerning a setting for "the Android operating system" led to Plaintiff's purported overcharges); *id*. ¶ 63 (alleging that the Android "operating system" "caus[es] users to deplete their data cap unknowingly.")). These allegations—all focused on alleged harm caused by the operation of "software and systems" in Project Fi—are directly analogous to the software-based claims above and the Court should similarly rule that they fall outside the ambit of the CLRA. *Ferrington*, 2010 WL 3910169, at *14.

The fact that Plaintiff refers in conclusory terms to the "Project Fi service" in the FAC does not change the analysis. In *Rojas-Lozano v. Google, Inc.*, 159 F. Supp. 3d 1101, 1115 (N.D. Cal. 2016), plaintiffs argued that their claim regarding the reCAPTCHA software fell within the CLRA because it is a "component" of online services like Gmail. The Court rejected this argument because the plaintiffs' alleged harm stemmed specifically from the reCAPTCHA software and not from other aspects of the Gmail service. *Id*. at 1115-16. *See also Yunker*, 2013 WL 1282980, at *13 (holding that a claim involving the Pandora App did not involve a "service" and explaining that even though the plaintiff "alleges that Pandora allows users to stream, access and download music," the plaintiff "has not complained about this aspect of the Pandora App."). Similarly here, although Plaintiff refers repeatedly to the "Project Fi service" in the FAC, he is not complaining about any aspect of Project Fi that could be deemed a "service." Rather, his allegations are focused specifically on the operation of the Android operating system and other software that purportedly caused his alleged harm.

For all these reasons, Plaintiff's CLRA claim should be dismissed for the additional reason that it does not involve "goods or services" within the scope of the statute.

## IV.   REQUEST FOR JUDICIAL NOTICE

The Court should take judicial notice of the Project Fi FAQs (attached as Exhibit A to the

Querubin Declaration) into the FAC for the following reasons.

First, when ruling on a motion to dismiss, a court may consider facts that are "not subject to reasonable dispute," including materials that "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b). Under this standard, "websites and their contents may be proper subjects for judicial notice." *Caldwell v. Caldwell*, No. C 05-4166 PJH, 2006 WL 618511, at *4 (N.D. Cal. Mar. 13, 2006); *see also Kinderstart.com, LLC v. Google, Inc.,* No. 06-2057 JF (RS), 2007 WL 831806, at *21 n.20 (N.D. Cal. Mar. 16, 2007) (taking judicial notice of pages on defendant Google's website); *Frances Kenny Family Tr. v. World Savs. Bank FSB*, No. 04-3724 WHA, 2005 WL 106792, at *1 n.1 (N.D. Cal. Jan. 19, 2005) (finding content on plaintiffs' website to be proper matter for judicial notice). Here, the Project Fi FAQs are "not subject to reasonable dispute" because they are publicly available on Google's website at fi.google.com and their contents can be readily verified. (*See* FAC ¶¶ 17, 24; *see also* Querubin Decl. ¶ 2.) Plaintiff, in fact, notes the precise location where the FAQ can be found on the Project Fi website. (FAC ¶ 24.)

Second, the Court can consider materials where "the plaintiff refers extensively to the document or the document forms the basis of the plaintiff's claim." *U.S. v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003). Here, Plaintiff quotes a specific question and answer from the FAQs and uses it to support his central allegation that Google misled Project Fi users into believing that they would never be charged for cellular data while connected to Wi-Fi. (FAC ¶¶ 2, 24, 88, 122.) Under these circumstances, the Court should consider additional questions and answers within the FAQs accessible on the same webpage to prevent Plaintiff from benefiting from quoting a single question and answer out of context to support his claims, while ignoring the other FAQs that undermine his claims. *See Swartz v. KPMG LLP*, 476 F.3d 756, 763 (9th Cir. 2007) ("In order to '[p]revent[] plaintiffs from surviving a Rule 12(b)(6) motion by deliberately omitting . . . documents upon which their claims are based,' a court may consider a writing referenced in a complaint but not explicitly incorporated therein if the complaint relies on the document and its authenticity is unquestioned.") (citation omitted).

Accordingly, the Court should take judicial notice of the Project Fi FAQs attached as Exhibit

1    A to the Querubin Declaration.

2    **V.    CONCLUSION**

3          For these reasons, Google respectfully requests that the Court dismiss with prejudice

4    Plaintiff's claims for violations of the CLRA, the UCL, the FAL, and for breach of contract.

5

6    Dated:  May 7, 2018                              COOLEY LLP

7

8                                                      */s/ Whitty Somvichian*
                                                       _____
9                                                      Whitty Somvichian (194463)
                                                       Attorneys for Defendant
10                                                     GOOGLE NORTH AMERICA INC.

11

12   174645718

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28